UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NEW PAR d/b/a VERIZON WIRELESS,
CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS, and MUSKEGON CELLULAR
PARTNERSHIP d/b/a VERIZON WIRELESS,

                  Plaintiffs,

v.

J. PETER LARK, LAURA CHAPPELLE, and
MONICA MARTINEZ, Commissioners of the
Michigan Public Service Commission,

                  Defendants.

_____/

Case No. 5:06-cv-71
MPSC Case No. U-14678

HON. JANET T. NEFF


## OPINION

        Plaintiffs, commercial mobile radio service providers who collectively do business as "Verizon Wireless," filed this four-count complaint against defendants, members of the Michigan Public Service Commission (MPSC), seeking review of and relief from an April 13, 2006 order issued by defendants in *In the Matter of the Petition of Ace Telephone Company, Barry County Telephone Company, Deerfield Farmers' Telephone Company, Kaleva Telephone Company, Lennon Telephone Company, Ogden Telephone Company, Pigeon Telephone Company, the Upper Peninsula Telephone Company, and Waldron Telephone Company, for the Arbitration of Interconnection Rates, Terms, and Conditions and Related Arrangements with Verizon Wireless Pursuant to Section 252(b) of the Telecommunications Act of 1996,* MPSC Case No. U-14678.

In the April 13, 2006 order, the MPSC approved the interconnection agreements between Verizon Wireless and the nine telephone companies who petitioned the MPSC to arbitrate the agreements.  Judicial review is appropriate under 47 U.S.C. § 252(e)(6), which permits any party aggrieved by a state commission's determination to bring an action in federal court to determine whether the agreement meets certain statutory requirements.  Having carefully considered the arguments made by the parties in their briefs and at oral argument as well as the amicus curiae brief of the Michigan Exchange Carriers Association (MECA), this Court finds no merit in the complaint and therefore affirms the MPSC's decision to approve the interconnection agreements.

## I. Background

Ace Telephone Company, Barry County Telephone Company, Deerfield Farmers' Telephone Company, Kaleva Telephone Company, Lennon Telephone Company, Ogden Telephone Company, Pigeon Telephone Company, Waldron Telephone Company, and Upper Peninsula Telephone Company are Michigan corporations that own and operate telecommunications facilities or networks and provide local telephone service to customers in geographic areas known as "exchanges."  These nine companies are characterized in the record as "incumbent" local exchange carriers (ILECs) because they were providing local exchange services in their respective geographic service areas on the date of the enactment of the federal Telecommunications Act of 1996 (FTA), 47 U.S.C. § 152 *et seq.*

In addition to providing telecommunications services to customers for calls made between their customers within their exchanges, petitioners also use their facilities or networks to "transport and terminate" (i.e., deliver) telephone calls originated by customers of other telephone

2

companies, such as Verizon Wireless' customers, to petitioners' customers. Petitioners are required to "interconnect" with other telecommunication companies and provide transport and termination services to those companies. See 47 U.S.C. § 251(c)(2) (providing that incumbent local exchange carriers have the "duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier's network-for the transmission and routing of telephone exchange service and exchange access"); 47 C.F.R. § 20.11(a) (providing that a "local exchange carrier must provide the type of interconnection reasonably requested by a mobile service licensee or carrier").

Petitioners are entitled to be compensated for providing these interconnection services. See 47 C.F.R. § 20.11(b)(2) ("A commercial mobile radio service provider shall pay reasonable compensation to a local exchange carrier in connection with terminating traffic that originates on the facilities of the commercial mobile radio service provider.").

The federal Telecommunications Act provides a process to facilitate "interconnection agreements" (ICAs) between ILECs like petitioners and a telecommunications carrier like Verizon Wireless. The FTA requires that ILECs and requesting telecommunications carriers first negotiate in good faith regarding the terms and conditions of their agreements. See 47 U.S.C. § 251(c)(1). Pertinent here is the requirement that parties to an ICA must establish reciprocal compensation arrangements for the transport and termination of telecommunications. See 47 U.S.C. § 251(b)(5).

If the parties are unable to resolve their differences, then either party may petition the state regulatory commission to arbitrate any open issue. 47 U.S.C. § 252(b)(1). The FTA directs the Federal Communications Commission (FCC) to create implementing regulations and gives state public utility commissions, such as the MPSC, oversight responsibilities of the ICAs.

3

The MPSC sets standards case-by-case through adjudication. See *Northern Michigan Exploration Co. v. Public Serv. Comm'n,* 396 N.W.2d 487, 493 (Mich. Ct. App. 1986) ("[I]t is settled that an agency has the option of setting standards either pursuant to the rule-making provisions of the APA or case-by-case through adjudication.").

Pertinent here is the MPSC's 1994 decision, *In the Matter of the Proceedings, on the Commission's Own Motion, to Refine the Definition of, and Develop a Methodology to Determine, Long Run Incremental Cost for Application under 1991 PA 179,* MPSC Case No. U-10620, where the MPSC issued an order developing a state-wide cost methodology: the Total Service Long Run Incremental Cost (TSLRIC) methodology. The MPSC observed that "[u]se of the TSLRIC will ensure that all customers who use identical network functions are assigned the same level of cost." The MPSC required providers, within 180 days of its order and every two years thereafter, to submit cost studies reflecting the use of the MPSC's costing principles and the basic network component categories and subcategories for their entire networks. However, the MPSC supported MECA's proposal allowing small LECs to jointly perform cost studies.

Also pertinent here is the MPSC's 1996 directive in *In the Matter of the Proceedings, on the Commission's Own Motion, to Establish a Procedure for Arbitration Under the Federal Telecommunications Act of 1996,* MPSC Case No. U-11134. There, the MPSC opted for "baseball-style arbitration," limiting an arbitration panel to selecting the position of one of the parties on each issue unless the result would be clearly unreasonable or contrary to the public interest. The MPSC emphasized that the arbitration process is not patterned after a contested case proceeding and that the parties would not have a right to conduct discovery, although either party could request that the panel order the production of additional information from the other party.

4

In October 2005, after their attempts to negotiate interconnection agreements with Verizon Wireless were unsuccessful, the nine ILECs petitioned the MPSC to arbitrate agreements for them.  One of the open issues for arbitration was the reciprocal compensation rate that would apply to the costs associated with the transport and termination of telecommunications traffic between Verizon Wireless and the ILECs.  The MPSC assigned the arbitration proceeding Case No. U-14678 and the caption *In the Matter of the Petition of Ace Telephone Company, Barry County Telephone Company, Deerfield Farmers' Telephone Company, Kaleva Telephone Company, Lennon Telephone Company, Ogden Telephone Company, Pigeon Telephone Company, the Upper Peninsula Telephone Company, and Waldron Telephone Company, for the Arbitration of Interconnection Rates, Terms, and Conditions and Related Arrangements with Verizon Wireless Pursuant to Section 252(b) of the Telecommunications Act of 1996.*

All of the petitioners except Upper Peninsula Telephone Company proposed that the transport and termination rates be based on the joint TSLRIC studies approved by the MPSC in 1998 and 2000 in two cost study reviews to which these eight petitioners were party:  *In the Matter of the Application of the Michigan Exchange Carriers Association, Inc., for Approval of a Total Service Long Run Incremental Cost Study,* MPSC Case No. U-11448, and *In the Matter of the Application of the Michigan Exchange Carriers Association, Inc., for Approval of a Total Service Long Run Incremental Cost Study,* MPSC Case  No. U-12261.  (Compl. ¶ 26.)

Upper Peninsula Telephone Company proposed that its transport and termination rates be based on the TSLRIC cost studies approved by the Commission in the 1998 and 2000 cost study reviews to which it was previously a party:  *In the Matter of the Application of the Michigan Exchange Carriers Association, Inc., for Approval of a Total Service Long Run Incremental Cost*

*Study,* MPSC Case No. U-11448, and *In the Matter of the Application of Upper Peninsula Telephone Company for Approval of a Total Service Long Run Incremental Cost Study,* MPSC Case No. U-12471.  (Compl. ¶ 28.)

Verizon Wireless objected, asserting that these cost studies were too old to be appropriately used for establishing rates for the interconnection agreements.  Instead of the rates proposed by petitioners, Verizon Wireless proposed that the MPSC order the parties into a "bill and keep" arrangement until current, forward-looking cost studies could be approved. Alternatively, Verizon Wireless proposed a rate that the MPSC could impose as a reasonable interim rate until new cost studies could be produced.

In November 2005, Verizon Wireless filed a Motion for Discovery for Production of the Cost Studies.  Verizon Wireless acknowledged that the MPSC had previously determined that parties to § 252 arbitration proceeding such as the one filed by petitioners do not have a right to conduct discovery.  However, Verizon Wireless claimed that "[t]his arbitration is unlike any other to come before the Commission in recent years" inasmuch as "petitioners have placed their cost studies, inputs and assumptions at issue in this proceeding."

After obtaining a protective order, MECA provided Verizon Wireless with the cost study results and the mapping information relating to the cost studies the MPSC had previously approved.  However, Verizon Wireless renewed its discovery motion, claiming that it needed the actual cost studies and working models or electronic copies of the inputs and models.

In response to Verizon Wireless' renewed motion, petitioners argued that the motion violated settled MPSC orders that parties to an interconnection agreement arbitration do not have a right to conduct discovery.  Petitioners emphasized that this was not a contested cost-study

review case and that Verizon Wireless' arguments were improper collateral attacks on the earlier cost-study review proceedings.

In December 2005, the arbitration panel issued a letter declining to decide Verizon Wireless' motion and renewed motion to compel discovery for the reasons supplied by petitioners. Verizon Wireless unsuccessfully sought leave to appeal to the MPSC from the arbitration panel's decision.

On January 23, 2006, the arbitration panel issued its decision.  The panel recommended that the MPSC adopt as interim rates the reciprocal compensation rates petitioners proposed.  The panel reasoned that the MPSC had approved the cost studies relied on by petitioners in MPSC Case Nos. U-12261 and U-12471, that petitioners' proposed rates were based on the results of the mapping analysis approved in these cost studies, and that Verizon Wireless had not disputed this mapping analysis.

The arbitration panel found that Verizon Wireless' attempts to re-litigate the cost studies at issue through examination of the cost study contents was beyond the scope of the proceeding and constituted a collateral attack on the MPSC's orders in Case Nos. U-12261 and U-12471.  The panel was persuaded that only the cost study results were relevant in this arbitration proceeding and that petitioners' cost studies represented "a reasonable approximation of the cost of terminating calls" as required by the FTA.  The panel observed that the cost studies were not merely a listing of embedded or historical costs but were "forward-looking studies" developed in anticipation of future rate-setting.

Nonetheless, the arbitration panel found some merit to the assertions that the cost studies could be dated in certain respects and may overstate certain costs, such as digital switching

and cost of capital.  The panel believed the use of these cost studies indefinitely into the future for setting rates would be contrary to the public interest.  The panel opined that the passage of time and changes in the industry and methodology constituted a sufficient change in circumstances to warrant preparation of a new cost study.  The panel recommended that petitioners' proposed rates serve as interim rates until a new cost study was approved.

In making this recommendation, the arbitration panel specifically rejected Verizon Wireless' alternative interim proposals.  The panel also rejected Verizon Wireless' assertion that the cost studies themselves must be made a part of the record.  The panel observed that the studies at issue had been submitted and addressed in the prior review proceedings and that the MPSC could properly take administrative notice of the cost studies in this arbitration proceeding.

Both sides filed exceptions to the decision of the arbitration panel.  Petitioners argued that the MPSC should adopt petitioners' proposed rates for purposes of the interconnection agreements, not merely as interim rates until the completion of a new cost study proceeding.  Petitioners also argued that the arbitration panel went beyond its authority because the issue of whether a new cost study should be required had not been submitted to it.  Moreover, petitioners argued that there was no fundamental change requiring new studies to be filed where the MPSC had not changed the rules as to how a TSLRIC study is to be conducted or the methodology to use since it approved petitioners' studies.

Verizon Wireless argued that the arbitration panel should not have adopted petitioners' proposed rate as an interim rate.  Verizon Wireless argued that the FCC's rules for establishing total element long run incremental costs have dramatically changed since the MPSC

approved the cost studies relied upon by petitioners.  Moreover, Verizon Wireless argued that petitioners were required to present company-specific evidence of their costs.

Verizon Wireless also argued that the arbitration panel erred in failing to afford it the relief requested in its November 2005 motions to compel discovery.  Verizon Wireless argued that the actual cost studies, working models, or electronic copies and models that it requested were necessary for the MPSC to reach a lawful decision.  Verizon Wireless argued that without access to this information, it was unable to develop testimony, present an argument, and otherwise receive a fair hearing.

The MPSC issued an order on February 21, 2006.  On the matter of appropriate rates, the MPSC adopted the arbitration panel's reasoning, findings, and conclusions as "well reasoned and complete."   The MPSC rejected petitioners' claim that it was without authority to require a review of petitioners' cost studies, finding that such statutory authority was conferred on it.

Conversely, the MPSC rejected Verizon Wireless' argument that it may only approve cost studies for each individual ILEC.  The MPSC pointed out that for small ILECs, the Commission had previously concluded that a joint cost study was permissible.  Nothing in 47 U.S.C. § 252(d)(2) persuaded it to the contrary.  The MPSC reasoned that small companies will tend to have similar costs and that to require each of several companies with similar costs to conduct its own cost study "would be to impose an undue burden on those companies, without a commensurate benefit of improved accuracy."

Consequently, the MPSC further rejected Verizon Wireless' argument that there should be a "true-up" of rates before the inception of the interconnection agreements after the MPSC issued an order adopting new cost studies.  The MPSC instead found that "petitioners' cost

9

studies, as currently approved, comply with legal requirements until the Commission issues an order stating otherwise." The MPSC held that "the current rates, as mapped by petitioners will be effective until the Commission approves a different cost study."

The MPSC took administrative notice of the previously approved cost studies, thereby including their results in the record. The MPSC rejected Verizon Wireless' argument that the arbitration panel erred in failing to grant the discovery motions. The MPSC observed that it has "repeatedly held that an arbitration proceeding is not the proper forum for resolution of cost study issues."

The MPSC stated that it will not review cost studies in arbitration proceedings because the time permitted for completion of an arbitration proceeding simply does not permit such a detailed and complicated process. The MPSC pointed out that Congress had not required a contested case proceeding in FTA § 252 but opted for "a much more truncated proceeding." According to the MPSC, FTA § 252 "clearly does not contemplate an exhaustive litigation process" but a quick and simple arbitration before the MPSC that lasts only approximately 100 days.

The MPSC stated that it also declines to review cost studies in arbitration proceedings because cost studies affect more than the parties to an ICA arbitration. Specifically, a cost study for an ILEC affects all parties that may desire to interconnect to provide service. It also affects facilities based competitors and end-user customers. The MPSC opined that to review a cost study in an arbitration case with one competitive local exchange carrier would be "imprudent at best and at worst affect due process rights of many other entities."

On the same day it issued its February 21, 2006 order in this arbitration proceeding, the MPSC, on its own motion, initiated a new cost study of the total service long-run incremental costs of the members of MECA, including the nine petitioners.  See *In the Matter, on the Commission's Own Motion, to Examine the Total Service Long Run Incremental Costs of the Michigan Exchange Carriers Association Companies, including Ace Telephone Company, Barry County Telephone Company, Deerfield Farmers' Telephone Company, Kaleva Telephone Company, Lennon Telephone Company, Ogden Telephone Company, Pigeon Telephone Company, the Upper Peninsula Telephone Company, and Waldron Telephone Company,* MPSC Case No. U-14781.  Verizon Wireless is participating in the new cost study.

The nine petitioners and Verizon Wireless subsequently filed interconnection agreements with the MPSC, incorporating the resolution of issues in accordance with MPSC's February 21, 2006 order.  On April 13, 2006, the MPSC issued its order approving the interconnection agreements.

In May 2006, Verizon Wireless filed its four-count complaint in this Court from the MPSC's April 13, 2006 order, seeking review of and relief from the MPSC's underlying legal conclusions.  A case management order was issued indicating that because Verizon Wireless' complaint was in the form of an appeal, the issues presented in the complaint would be decided upon the administrative record and the briefs of the parties.  The parties subsequently briefed the issues and presented oral argument to this Court in November 2007.

## II. Standard of Review

"In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district

court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section."   47 U.S.C. § 252(e)(6).   State courts are expressly deprived of jurisdiction to review interconnection agreements.   47 U.S.C. § 252(e)(4).

The Sixth Circuit has adopted the bifurcated standard the majority of other circuits employ in reviewing state public service commission orders.   *Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc.,* 339 F.3d 428, 433 (6th Cir. 2003).   First, the federal judiciary should review de novo whether a state public service commission's orders comply with the requirements of the federal Telecommunications Act.   *Id.*   "If no illegality is uncovered during such a review, the question of whether the state commission correctly interpreted the challenged interconnection agreement must then be analyzed, but under the more deferential arbitrary-and-capricious standard of review usually accorded state administrative bodies' assessments of state law principles."   *Id.*
 "With no clear error in interpretation of federal law or unsupported, arbitrary and capricious findings by a state commission, the decisions of such commissions generally stand."   *Michigan Bell Tel. Co. v. MCI Metro Access Trans. Svcs. Inc.,* 323 F.3d 348, 353 (6th Cir. 2003).

### III. Discussion

### *Count 1*

In Count 1, Verizon Wireless alleges that the MPSC set interim transport and termination rates based on cost studies that were not demonstrated to be "forward looking" as required by 47 C.F.R. §§ 51.715(b)(3).   Verizon Wireless argues that petitioners  were required to file new cost studies because the facts supporting their proposed rates were outdated and the methodology used to calculate traffic-sensitive usage for end office switching was inadequate.

Verizon Wireless argues that the MPSC was therefore barred from applying the proposed rates as interim compensation.

The MPSC responds that the rates petitioners proposed complied with federal requirements as the rates were based on previously approved forward-looking cost studies. The MPSC responds that the interim rates in this case were established using the TSLRIC studies approved by the MPSC in Case No. U-12261 (for all petitioners except Upper Peninsula Telephone Company) and in Case No. U-12471 (for Upper Peninsula Telephone Company). According to the MPSC, using costs derived from MPSC-approved cost studies satisfied the statutory requirement that the interim rates be based on forward-looking cost studies. The MPSC concedes that it has  recognized that the cost studies it previously approved do not retain their value indefinitely. In this regard, the MPSC points out that it exercised its authority to initiate a new examination of petitioners' costs.

Verizon Wireless' argument lacks merit.

47 C.F.R. § 51.705(a) provides that an ILEC's rates for transport and termination of telecommunications traffic shall be established, "at the election of the state commission," on the basis of (1) the forward-looking economic costs of such offerings, using a cost study pursuant to §§ 51.505 and 51.511; (2) default proxies, as provided in § 51.707; or (3) a bill-and-keep arrangement, as provided in § 51.713.

"[I]n a state in which the state commission has established transport and termination rates based on forward-looking economic cost studies, an incumbent LEC shall use these state-determined rates as interim transport and termination rates." 47 C.F.R. § 51.715(b)(1). See also 47 C.F.R. § 20.11(e). Because the MPSC has established transport and termination rates

based on forward-looking economic cost studies, these state-determined rates were the proper interim pricing arrangement while approval of the parties' transport and termination rates was pending.

The incumbent LECs bore the burden of proving to the MPSC that the rates for each element they offer do not exceed the forward-looking economic cost per unit of providing the element. See 47 C.F.R. § 51.505(e). In its prior decisions, Case Nos. U-12261 and U-12471, the MPSC held that the ILECs satisfied their burdens of proof in this regard.

Verizon Wireless alleges a plethora of errors in the previously approved cost studies, but, as the MPSC points out, Verizon Wireless does not challenge the methodology petitioners used. Verizon Wireless' argument is instead that the cost studies were neither individualized nor recent and amounts to nothing more than a collateral attack on the cost studies.

Verizon Wireless' argument lacks merit because it can point to no authority supporting its position that the cost studies must be individualized or more recently created than the cost studies relied upon in this case. The frequency with which providers are required to submit cost studies and the permission for small LECs to jointly perform cost studies were issues brought before and decided by the MPSC in a prior case. A final order of a public utility commission that is regular on its face ordinarily may not be attacked collaterally. 73B C.J.S. Public Utilities § 238 (2007). Accordingly, Verizon Wireless' arguments do not establish any error by the MPSC in setting the interim rates in this arbitration proceeding.

*Count 2*

In Count 2, Verizon Wireless alleges that the MPSC erred by failing to require in its February 21, 2006 order a "true-up" of the interim rates once a cost-based rate is ultimately

14

determined.  Verizon Wireless argues that a true-up is expressly required by 47 C.F.R. § 51.715(d) where the final rates differ from the interim rates.  Verizon Wireless suggests that until valid and lawful forward-looking rates are established pursuant to 47 C.F.R. § 51.705, this Court should order the MPSC to establish interim rates that will be adjusted "to allow each carrier to receive the level of compensation it would have received had the rates in the interim arrangement equaled the rates later established by the commission."

The MPSC responds that Verizon Wireless' claim that a true-up mechanism is required is premised on the erroneous assumption that the rates the MPSC adopted do not comply with forward-looking cost requirements.  The MPSC reiterates that the rates it adopted were based on MPSC-approved TSLRIC studies (i.e., forward-looking costs) and therefore satisfied all federal pricing requirements.  Accordingly, the MPSC concludes that no true-up is required.

Verizon Wireless' argument on Count 2 is rendered moot by this Court's conclusion on Count 1.  Because the interim rates the MPSC adopted are based on rates established in accordance with 47 C.F.R. § 51.705, the MPSC correctly determined that no true-up is required.

*Count 3*

In Count 3, Verizon Wireless alleges that the MPSC erred in approving petitioners' proposed transport and termination rates where the cost studies upon which the MPSC set its rates were not reflective of "each carrier's network" as required by FTA § 252(d)(2) but were instead averaged cost studies containing costs from a variety of carriers, including companies not involved in the arbitration proceeding.  Verizon Wireless also again alleges that the cost studies upon which the MPSC set its rates were not forward-looking as required by 47 C.F.R. § 51.505(e) but were

15

instead "dated."  For example, Verizon Wireless points out that the switch costs in MECA's TSLRIC study were at least 5 years old.

The MPSC responds that FTA § 252(d)(2) does not preclude small companies from joining together to produce cost studies applicable to the whole group.  The MPSC opines that allowing small ILECs to prepare and utilize joint cost studies enhances their ability to compete. The MPSC asserts that Michigan adopted this pro-competitive policy before the enactment of the FTA and that FTA § 261(a) expressly authorizes states to continue to enforce their pro-competitive regulations.

Additionally, the MPSC responds that petitioners' rate proposal was based on a forward-looking cost study as required by 47 C.F.R. § 51.505 and § 51.511.  The MPSC argues that its orders approving the cost studies relied upon by petitioners remain in full force and that it did not err in allowing petitioners to rely on the cost studies it approved in prior cases.  The MPSC argues that Verizon Wireless inappropriately relies on the MPSC's acknowledgment that cost studies do not retain their value indefinitely.

In its amicus brief, MECA argues that the MPSC's determination that small companies can use joint cost studies to establish rates is consistent with the FTA and Congress' intent not to create undue burdens for small telephone companies.  MECA argues that § 252(d) of the FTA does not expressly prohibit joint cost studies and, in fact, § 261 of the Act authorizes state commissions to retain any pre-FTA regulations that fulfill the requirements of the FTA, such as the MPSC's 1994 establishment of a state-wide cost methodology.  MECA emphasizes that its members are small, rural telephone companies and that to force them to produce their own forward-looking cost studies will cause them a significant adverse impact.

16

Verizon Wireless' argument lacks merit.

All interconnection agreements, whether reached through negotiation or arbitration, must be submitted to the state commission for approval.  47 U.S.C. § 252(e).  A state commission may reject an arbitrated agreement only if it does not meet the requirements of § 251 and its implementing regulations or if the agreement fails to meet the pricing standards set forth in § 252(d).  47 U.S.C. § 252(e)(2).

With respect to charges for transport and termination of traffic, a state commission may consider the rate of reciprocal compensation "just and reasonable" only if (i) such terms and conditions provide for "the mutual and reciprocal recovery by each carrier of costs associated with the transport and termination on each carrier's network facilities of calls that originate on the network facilities of the other carrier, and (ii) such terms and conditions determine such costs on the basis of "a reasonable approximation of the additional costs of terminating such calls."  47 U.S.C. § 252(d)(2)(A).

As discussed under Count 1, the FCC's pertinent implementing regulation, 47 C.F.R. § 51.705, requires a state commission to set an ILEC's rate for transport and termination at the forward-looking economic costs of such services, using a cost study consistent with 47 C.F.R. §§ 51.505 and 51.511.  Under § 51.505(e), each petitioner bore the burden to prove to the MPSC that the rate for each element it offers does not exceed the forward-looking economic cost of the unit and that the methodology employed complies with § 51.511.  Again, the MPSC has previously conducted cost study reviews and decided that the ILECs satisfied their burdens of proof in this regard.

As the MPSC emphasizes, its 1994 decision establishing the state-wide methodology remains in full force.  See 47 U.S.C. § 261(a) ("Nothing in this part shall be construed to prohibit the Commission from enforcing regulations prescribed prior to February 8, 1996, in fulfilling the requirements of this part, to the extent that such regulations are not inconsistent with the provisions of this part.").  Accordingly, like its argument challenging the interim rates in this case, Verizon Wireless' argument challenging the MPSC's approval of the reciprocal compensation rates in the interconnection agreements reveals no error by the MPSC requiring reversal by this Court.  Rather, the MPSC properly construed 47 U.S.C. § 252(d)(2) and the applicable FCC rules.

*Count 4*

Last, in Count 4, Verizon Wireless alleges that the MPSC's failure to include petitioners' cost studies in the record violated federal law governing the arbitration of interconnection disputes, specifically, 47 C.F.R. § 51.505(e)(2).  Verizon Wireless argues that because the MPSC did not permit this discovery, Verizon Wireless lacked an opportunity to comment and this Court lacks a factual record for review of the establishment of the rates for reciprocal compensation.

The MPSC responds that its arbitration proceeding produced an evidentiary record sufficient for purposes of this Court's review where the cost study summaries were admitted.  The MPSC points out that nothing in 47 C.F.R. § 51.505(e) requires that complete cost studies with working models and inputs be included in the record of an arbitration proceeding, particularly in this arbitration proceeding, where the inputs, methodology and models are not subject to challenge.

In reply, Verizon Wireless argues that the mere fact that at an earlier date, parties other than Verizon Wireless had notice and an opportunity to review and respond to petitioners'

18

cost studies does not correct the procedural flaw that deprived Verizon Wireless of the right to inspect and comment on the cost studies during the arbitration of the interconnection agreements with petitioners.   Verizon Wireless opines that the MPSC foreclosed inquiry into the actual numbers and proof used to substantiate the costs from the cost study, preventing Verizon Wireless from having the information necessary to effectively challenge the results.

Verizon Wireless' argument lacks merit.

FTA §§ 252(b) and 252(c) address the procedures and standards for arbitrating interconnection agreements.  Subsection (b) provides in pertinent part that "[t]he State commission may require the petitioning party and the responding party to provide such information as may be necessary for the State commission to reach a decision on the unresolved issues."  47 U.S.C. § 252(b)(4)(B).  Subsection (c) provides in pertinent part that "[i]n resolving by arbitration under subsection (b) any open issues and imposing conditions upon the parties to the agreement, a State commission shall ensure that such resolution and conditions meet the requirements of section 251, including the regulations prescribed by the [Federal Communications] Commission pursuant to section 251."  47 U.S.C. § 252(c)(1).

As Verizon Wireless points out, the pertinent FCC regulation is 47 C.F.R. § 51.505[e](2), which provides in part that "[a]ny state proceeding conducted pursuant to this section shall provide notice and an opportunity for comment to affected parties and shall result in the creation of a written factual record that is sufficient for purposes of review.  The record of any state proceeding in which a state commission considers a cost study for purposes of establishing rates under this section shall include any such cost study."

Again, the actual cost studies Verizon Wireless sought production of in this arbitration proceeding were submitted, addressed, and approved in prior MPSC cost study reviews. The MPSC has taken pains to emphasize the differences between cost study review proceedings and interconnection agreement arbitrations, determining that there is no right to discovery within the tight time frame mandated by Congress for arbitration proceedings. The MPSC properly followed its earlier decisions in determining that 47 C.F.R. § 51.505(e)(2) was satisfied by admitting the cost study summaries and taking notice of the previously-approved cost studies. 47 C.F.R. § 51.505(e)(2) does not require the discovery of petitioners' actual cost studies, inputs, and working models. The MPSC properly construed 47 U.S.C. § 252(c)(1) and the applicable FCC regulation.

## IV. Conclusion

This Court finds no error in the manner in which the MPSC conducted the arbitration proceeding between Verizon Wireless and petitioners. Further, the rates the MPSC approved comply with applicable federal standards. This Court AFFIRMS the MPSC's April 13, 2006 order in its entirety. An Order consistent with this Opinion will be entered.


DATED: January 8, 2008                          /s/ Janet T. Neff
                                                JANET T. NEFF
                                                United States District Judge

20